IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-40275-TLS |
| | ) | |
| ROBERT A. SEARS, | ) | CH. 11 |
| | ) | |
| Debtor. | ) | |
| IN THE MATTER OF: | ) | CASE NO. BK10-40277-TLS |
| | ) | |
| KORLEY B. SEARS, | ) | CH. 11 |
| | ) | |
| Debtor. | ) | |

## ORDER

Hearing was held in Omaha, Nebraska, on April 8, 2010, on motions for relief from stay filed by Ron H. Sears Trust, Rhett R. Sears Revocable Trust, Dane Sears, Rhett Sears, and Ronald Sears (Fil. #21 in BK10-40275; Fil. # 33 in BK10-40277); objections/resistances filed by Debtors (Fil. #37 in BK10-40275; Fil. # 50 in BK10-40277); motions to approve corporate voting process filed by Ron H. Sears Trust, Rhett R. Sears Revocable Trust, Dane Sears, Rhett Sears, and Ronald Sears (Fil. #24 in BK10-40275; Fil. # 36 in BK10-40277); and objections/resistances filed by Debtor s(Fil. #36 in BK10-40275; Fil. # 49 in BK10-40277). Jerrold L. Strasheim appeared for Debtors; Donald Swanson and Brian Koenig appeared for Ron H. Sears Trust, Rhett R. Sears Revocable Trust, Dane Sears, Rhett Sears, and Ronald Sears; Jeff Galyen appeared for Waldo Realty; Richard D. Myers appeared for Commercial National Bank of Ainsworth; and T. Randall Wright appeared for Farm Credit Services. This Order will be filed in both bankruptcy cases.

Rhett, Ronald, and Robert are brothers. Dane is the son of Ronald. Korley is the son of Robert, and Kelli is Robert's daughter. Because the last name of "Sears" is common to all of the parties involved in these motions, the moving parties will be referred to as the "Sears Creditors." Korley Sears will be referred to as "Korley," and Robert Sears will be referred to as "Robert." Other members of the Sears family will also be referred to by their first names.

For the reasons discussed below, the motions for relief from stay are granted. The motions to approve corporate voting process are denied.

*Factual Background*

The following facts have been established by the evidence.

1.   On or about June 22, 2007, Korley purchased from the Sears Creditors[1] 474 shares of AFY, Inc. ("AFY"). AFY operates a feed yard in Ainsworth, Nebraska. The sale documentation

---

[1] Although Kelli is not listed as one of the Sears Creditors, ten of the shares of AFY were acquired by Korley from Kelli.

is attached to the proofs of claim filed by the Sears Creditors in each of the bankruptcy cases. No dispute has been raised by Debtors as to the validity of the sale documentation attached to the proofs of claim. Therefore, for purposes of this Order, the copies of the sale documentation attached to the proofs of claim are deemed to be true and accurate.[2]

2. According to the argument of counsel for the Sears Creditors, upon acquisition of the shares by Korley under the transactions taking place in June 2007, the resulting ownership structure of AFY was that Robert owned 30.78% and Korley owned 69.22% of AFY when combined with the shares he previously owned. Counsel further stated that the shares pledged to the Sears Creditors represent approximately 64% of the shares of AFY.[3] Although no evidence as to the percentage ownership was presented, Debtors did not challenge these representations.

3. As part of the payment for his purchase of the shares in AFY, Korley executed and delivered promissory notes to the Sears Creditors. The promissory notes included the following:

| Note Date | Payee | Original Principal Amount |
|---|---|---|
| June 22, 2007 | Rhett R. Sears<br>Rhett R. Sears Revocable Trust | $2,480,745.48 |
| June 22, 2007 | Ronald H. Sears Trust | $2,895,768.90 |
| June 22, 2007 | Dane R. Sears | $ 242,109.00 |

4. To secure Korley's obligations under the promissory notes, Korley executed and delivered to the Sears Creditors his Pledge and Security Agreement dated June 22, 2007 ("Stock Pledge"). That Stock Pledge granted to the Sears Creditors a lien on, among other things, the 474 shares of AFY purchased by Korley from the Sears Creditors and Kelli. The Stock Pledge is also executed by Robert and various corporations for purposes of granting security interests in the shares of entities other than AFY.

5. The Stock Pledge provides that if an "Event of Default" shall have occurred and be continuing, all rights of Korley to exercise the voting and other consensual rights with respect to the shares of AFY shall become vested in the secured parties (the Sears Creditors). It further provides that an Event of Default shall be deemed to occur if there is an Event of Default as defined in the

---

[2]The purchase documentation affected the ownership interests in various other entities, but such entities are not pertinent to these proceedings.

[3]Unfortunately, that description of percentage ownership differs from the percentage ownership set forth in the schedules of AFY in its bankruptcy filing, Case No. BK10-40875-TLS. In the statement of financial affairs in that case, the ownership structure of AFY is shown as being 9.43% in Korley B. Sears; 84.83% in the Redmond Sears Trust; and 5.74% in Robert A. Sears. This discrepancy was not explained or raised at the hearing.

promissory notes or the grantors fail to perform any other terms, covenants, or conditions of the Stock Pledge.

6. Paragraph 6 of the Stock Pledge provides:

Upon the occurrence of an Event of Default and at any time thereafter, Secured Parties may exercise one or more of the following rights or remedies: (i) exercise all voting and other rights as a holder of the Collateral; (ii) exercise and enforce any or all rights and remedies available upon default to a Secured Party under the UCC . . . .

7. The terms of the promissory notes provide, among other things, that an Event of Default under the promissory note shall occur if Korley fails to pay any installment payment due within ten days after receipt of written notice from the holder of the note that such payment is past due.

8. In June 2009, Korley failed to make the annual payments due to the Sears Creditors under the promissory notes. On June 25, 2009, an attorney for the Sears Creditors sent a letter to an attorney for Korley advising that the payment due to Ron and Dane on June 20, 2009, was not paid and that a payment was due to Rhett on July 20, 2009. It further provided that "without waiving any rights and with reservation of all rights to declare default, Rhett, Ron and Dane will withhold taking any default actions at this time." It is unclear whether any subsequent notice of default was issued.

9. Sometime in late 2009, AFY ceased operations as a cattle feed yard and commenced voluntary liquidation of its assets in an apparent attempt to pay down its secured debt owed to, among other entities, Farm Credit Services. An auction sale occurred on November 5, 2009, which resulted in more than $17,000,000.00 being paid on secured claims.

10. On February 2, 2010, Robert and Korley each filed individual Chapter 11 proceedings, which are the cases in which the subject motions were filed.

11. In the meantime, Korley and Robert, as the sole officers and directors of AFY, continued their efforts to liquidate assets and pay down debt, causing an auction sale of real estate (which included the former feedlot property and approximately 3,000 surrounding acres) to occur on February 9, 2010.

12. The successful bidders at that auction entered into agreements to pay a total of approximately $10,200,000.00 to purchase those real estate assets of AFY.

13. The sales agreements resulting from the auction were prepared and executed and scheduled to close on March 31, 2010. However, before closing, on March 30, 2010, Robert and Korley, as the sole officers and directors of AFY, caused AFY to initiate its own Chapter 11 bankruptcy proceeding, Case No. BK10-40875-TLS. The motions that are the subject of this Order were not filed in that proceeding.

*Discussion*

The Sears Creditors have now filed two motions in the bankruptcy proceedings of Korley and Robert. The first is a motion for relief from stay seeking authority to exercise their rights and remedies under the Stock Pledge and state law resulting from the defaults by Korley under the promissory notes due and payable to the Sears Creditors. The second motion filed by the Sears Creditors is a motion for approval of corporate voting process, subject to condition precedent. I will first address the motions for relief for stay.

    1.    <u>Motion for Relief in Robert's Bankruptcy Proceeding</u>.

According to the Sears Creditors, the motion for relief in Robert's case was filed simply out of an abundance of caution. The Sears Creditors do not have a security interest, lien upon, or other right, title, or interest in and to the shares of AFY owned by Robert. Also, Robert is not an obligor under the promissory notes due to the Sears Creditors. The motion for relief is primarily for the purpose of allowing the Sears Creditors to (i) exercise voting and other rights with respect to the shares of AFY; and (ii) exercise and enforce any and all other rights and remedies available to them under the terms of their pledge and security agreement, loan documentation, and Nebraska law.

Primarily, the Sears Creditors wish to exercise the voting rights in the shares owned by Korley in AFY to replace Korley and Robert as officers and directors of AFY, and thereby control the actions of AFY in its bankruptcy proceeding .

Since Korley is the owner of the shares of AFY pledged to the Sears Creditors, there is nothing in 11 U.S.C. § 362(a) that would impose an automatic stay upon the Sears Creditors simply as a result of Robert's Chapter 11 bankruptcy filing. Robert does appear to own AFY shares but did not pledge his shares to the Sears Creditors. However, Robert did pledge shares of other entities to the Sears Creditors as security for Korley's obligations under the promissory notes. Thus, although there is no stay in effect in Robert's bankruptcy with regard to the rights of the Sears Creditors to proceed with remedies against the shares of AFY, there is an automatic stay in effect with respect to other pledged assets owned by Robert.

There is no doubt that payments due from Korley to the Sears Creditors under the promissory notes are in default. Robert has not offered or provided any adequate protection to the Sears Creditors to compensate them for being deprived of their ability to exercise their voting rights and other remedies against those items of collateral that may be assets of Robert's bankruptcy estate.[4] Therefore, "cause" exists for granting relief from the automatic stay in Robert's bankruptcy in favor of the Sears Creditors.

---

[4]As previously discussed, it may be necessary for the Sears Creditors to give default and/or cure notices or take other steps under their loan documentation prior to exercising default remedies.

  2.  <u>Motion for Relief in Korley's Bankruptcy Proceeding</u>.

  Clearly, the automatic stay does exist in Korley's bankruptcy since the shares pledged to the Sears Creditors are owned by Korley. Counsel for Korley argued at the hearing that relief from the automatic stay should not be granted because the motion is an abusive filing. Specifically, Korley and Robert are the sole officers and directors of AFY and have determined to put AFY into its own bankruptcy proceeding. As part of that bankruptcy proceeding, they desire to reject the auction sale contracts because they believe in good faith that the auction sale proceeds were insufficient as being substantially below true market value. They further argue that the Sears Creditors are not acting in good faith, that the proposed sole officer and director to be appointed by the Sears Creditors has little or no experience in operating a cattle feedlot, and that Korley and Robert have developed a plan of reorganization for AFY that would be in the best interest of creditors.

  The arguments in opposition to the motion for relief seem to miss the threshold issue. That is, whether the Sears Creditors have established "cause" entitling them to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for lack of adequate protection. Specifically, it is undisputed that Korley has defaulted under the promissory notes due to the Sears Creditors by failing to pay the 2009 annual payments. Further, the Stock Pledge clearly and unambiguously grants to the Sears Creditors all voting and other consensual rights pertaining to the shares of, among other things, AFY.[5] The evidence clearly indicates that if given the right to move forward with their remedies, the Sears Creditors would replace Korley and Robert as officers and directors of AFY and would make different decisions in connection with the bankruptcy proceeding of AFY.

  Korley has not offered anything to compensate or adequately protect the Sears Creditors from deprivation of their ability to exercise their voting and other rights with respect to AFY. Thus, cause has been established for the granting of relief from the automatic stay in Korley's bankruptcy proceeding.

  3.  <u>Motions for Approval of Corporate Voting Process</u>.

  Pursuant to these motions, the Sears Creditors are asking this Court to approve, in the Robert and Korley bankruptcy proceedings, a shareholder voting process and adoption of a corporate resolution by the Sears Creditors in connection with the shares held by AFY. For the following reasons, I do not believe it is necessary or appropriate for this Court to grant the motions.

  First, as indicated previously, relief from stay is being granted to the Sears Creditors to exercise their voting rights and state law remedies, whatever those rights and remedies may be. Thus, they have the authority to move forward with taking such action as is authorized by their

---

[5]Although the payments are clearly delinquent, no opinion is expressed herein as to whether an Event of Default has occurred and as to whether the appropriate notices have been given to raise the delinquency to the level of an "Event of Default" as defined in the promissory notes and/or the Stock Pledge.

documentation and state law. They do not need an order from this Court approving of their voting process.

Second, although the shares at issue are owned by Korley, AFY is in its own Chapter 11 bankruptcy proceeding and, therefore, issues as to AFY's ownership structure, voting rights, and actions by its officers and directors should be dealt with in that proceeding. This is particularly true since relief from the automatic stay has been granted herein to the Sears Creditors to exercise their rights with respect to those shares.

Third, the present record is simply insufficient to establish whether the resolution proposed in the motion is appropriate. As indicated previously, the statement of financial affairs filed on behalf of AFY details a stock ownership structure substantially different than the stock ownership structure presented in support of these motions. Further, the record is unclear whether the Sears Creditors have taken all necessary steps to exercise their voting rights.

The motions for relief from stay are granted because it is undisputed that a delinquency exists under the promissory notes which would trigger the right of the Sears Creditors to commence taking action under their loan documentation as a result of the delinquency. This Court expresses no opinion as to the sufficiency of actions taken to date, or to be taken in the future. Accordingly, the motions for approval of corporate voting process are denied.

IT IS, THEREFORE, ORDERED that:

1.  Relief from the automatic stay in Robert's bankruptcy proceeding is granted in favor of the Sears Creditors (Fil. #21 in BK10-40275) and the 14-day stay of Federal Rule of Bankruptcy Procedure 4001(a)(3) is waived;

2.  Relief from the automatic stay in Korley's bankruptcy proceeding is granted in favor of the Sears Creditors (Fil. # 33 in BK10-40277) and the 14-day stay of Federal Rule of Bankruptcy Procedure 4001(a)(3) is waived;

3.  The motion for approval of corporate voting process in Robert's bankruptcy proceeding is denied (Fil. #24 in BK10-40275); and

4.  The motion for approval of corporate voting process in Korley's bankruptcy proceeding is denied (Fil. # 36 in BK10-40277).

DATED: April 12, 2010.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    Jerrold L. Strasheim
    *Donald Swanson/Brian Koenig
    Jeff Galyen
    Richard D. Myers
    T. Randall Wright
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.